DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CORI LAMAR BUTLER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-3394

[March 31, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Timothy L. Bailey, Judge; L.T. Case No. 18008878CF10A.

Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Alexandra A. Folley, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his conviction and sentence for manslaughter with a deadly weapon. He raises three issues on appeal. We affirm but write to address his argument that the trial court erred in excluding his father from the courtroom during trial.

A grand jury indicted the defendant for second degree murder with a deadly weapon for the stabbing death of his brother. The incident occurred at a family barbeque at a house the defendant shared with his cousin, her brother and daughter, and his brother ("victim"). The defendant's and victim's father attended the barbeque.

At the barbeque, the defendant and victim began to argue and the two tussled on the ground. The cousin told them both to leave. The cousin then saw the victim go into the house, followed by the defendant. The victim went into the back room, where the cousin and her daughter saw the victim packing his clothes into a bag. The cousin then went outside.

The defendant went into the kitchen and grabbed a large knife. When the defendant went into the back room, the victim's back was turned to him. According to the cousin's daughter, the defendant grabbed the victim, who then tried to push the defendant off, saying: "[w]hat are you doing?" The two again began to tussle. The defendant then stabbed the victim. The cousin's daughter testified that the defendant told the victim, "I told you . . . that I was going to stab you. I told you I was going to plug you," multiple times.

The cousin heard her daughter scream and ran back inside. When she entered the house, she saw blood coming from the victim's neck. The cousin grabbed a towel to put on his neck and called 911. The cousin heard the defendant say, "I told that n***** I was going to plug him. Die f****** n****, die." The victim died shortly thereafter.

The defendant then went around and banged on a door, demanding the cousin's brother give him money he had been holding for him. The cousin's brother saw the defendant wiping his hands on a rag. When the cousin's brother asked the defendant why he stabbed the victim, the defendant responded, "f*** that [n]*****. Let that [n]***** die. . . . I told him I was gonna stick'em."

The defendant then drove to the father's house. The father testified the defendant told him he had cut the victim during a fight. The father also testified the victim had been using flakka, which made him aggressive.

According to the defendant, the victim had been aggressive at the barbeque because he was on drugs. The victim tried to take money from the defendant's pockets. The victim struck the defendant on the side of the head and got the best of him in a fistfight that followed. According to the defendant, after the cousin told them to leave, the defendant was afraid and went inside to get his car keys, but the victim prevented him from doing so. The defendant testified he got the knife because he believed he was in real danger and wanted to scare the victim and defend himself. The victim was not afraid of the knife because he was approximately 80 pounds heavier than the defendant.

The defendant testified the victim threw his hands up when he came toward him. As the victim swung at the defendant, he tried to push him away, but the knife went into the victim's neck.

Following the testimony of the cousin and her brother at trial, the defendant requested his father be present for the remainder of the trial. The defendant argued that because his father is the victim's family

member, he should be present during the testimony. The trial court denied the request because the father was expected to testify, and the rule of sequestration had been invoked. The trial court indicated the father could remain in the courtroom following his testimony. The trial court also denied the defendant's renewed request.

The jury convicted the defendant of the lesser-included offense of manslaughter with a deadly weapon. In a special verdict, the jury found the defendant "actually possessed" a deadly weapon in committing the offense. The trial court adjudged the defendant guilty.

The trial court denied the defendant's motion for new trial. The court sentenced the defendant to thirty years and a day as a habitual felony offender and as a prison releasee offender.

- ***The Father's Exclusion from the Courtroom.***

In his first issue, the defendant argues the trial court erred in excluding his father, who is also the victim's father, from the trial because *Marsy's Law* grants the victim's family members the right to be present during trial proceedings. The State responds that even if the court abused its discretion in excluding the father, the defendant failed to show he was prejudiced or harmed by the father's exclusion. Therefore, any error is harmless. We agree with the State and affirm.

We "review[] a trial court's ruling on whether a witness can be present in the courtroom under an abuse of discretion standard." *Lebron v. State*, 232 So. 3d 942, 953 (Fla. 2017).

Article I, section 16, subsection (b) of the Florida Constitution (2018), commonly referred to as *Marsy's Law*, provides a list of rights afforded to victims in criminal proceedings. *Id.* Among them is the right for a victim, "upon request," to be present at "all public proceedings involving the criminal conduct, including, but not limited to, trial, plea, sentencing, or adjudication, even if the victim will be a witness at the proceeding, notwithstanding any rule to the contrary." Art. I, § 16(b)(6)(a), Fla. Const. The right extends to the victim's next of kin in homicide proceedings, provided that the next of kin's interests do not conflict with the victim's interests. Art. I, § 16(e), Fla. Const.

Here, the defendant argues the trial court erred in denying his request to have his father remain in the courtroom because he was the victim's next of kin. Thus, the defendant is asserting his dead brother's right as a victim.

3

*Booker v. State*, 773 So. 2d 1079 (Fla. 2000), addressed the issue in a similar context, albeit prior to *Marsy's Law* becoming effective.[1]  There, like here, the defendant argued the court erred in excluding the victim's great-niece from trial proceedings because she was expected to testify on the defendant's behalf and the rule of sequestration had been invoked.  *Id.* at 1086–87.  Although our supreme court determined the trial court had abused its discretion in excluding the relative, it held the defendant was not entitled to relief because there had been no showing the defendant was prejudiced by the exclusion.  *Id.* at 1095.

> This issue comes to us in an unusual procedural posture because it is generally the State that seeks to have a murder victim's family members present in the courtroom, while the defendant generally seeks to have such individuals excluded.
> . . . .
> [T]he State argues that the general rule of sequestration outweighed [the great-niece]'s constitutional right to be present in the courtroom.
> . . . .
> When considered together, our [prior jurisprudence] establish two general principles to be considered in analyzing a claim involving article I, section 16(b) of the Florida Constitution:  (1) the rights provided to victims and victims' families under article I, section 16(b) are not absolute, as they are subordinate to the rights of an accused when the rights involved are in conflict; and (2) **to be granted relief based on this type of issue, a party must establish prejudice**.
> . . . .
> [I]n circumstances such as this where the constitutional right to be present in court does not conflict with the accused's right to a fair trial, it is clear that the general rule should elevate the constitutional right above the rule of sequestration.  Moreover, in this particular case, there is no concern that [the great-niece]'s testimony would be tainted by her presence in court, as her testimony primarily focused on

---

[1] When *Booker* was decided, the Florida Constitution did not require a victim to request the right to be present in the courtroom, as it does now.  It previously only provided that "[v]ictims of crime or their lawful representatives, including the next of kin of homicide victims," had the right to be present "at all crucial stages of criminal proceedings, to the extent that these rights do not interfere with the constitutional rights of the accused."  Art. I, § 16(b), Fla. Const. (1988) (amended 2018).

the relationship she had established with [the defendant] after he had been incarcerated on death row. Therefore, we determine that the trial court abused its discretion by preventing [the great-niece] from being present in court until after she had testified.

Even though the trial court abused its discretion regarding this issue, however, [the defendant] has failed to assert how he may have been prejudiced by [the great-niece]'s temporary, one-day absence from court. [The great-niece] testified on [the defendant]'s behalf, was allowed to remain in court after she testified, and further provided a statement to the trial court at the *Spencer* hearing.

*Id.* at 1093–96 (emphasis added).

Similarly, here, the father's right to be present did not conflict with the defendant's right to a fair trial. Indeed, the father was listed as a defense witness. But, just as in *Booker*, the defendant failed to establish any prejudice by his father's exclusion. And, the father was permitted to sit in on the trial after he testified. *Booker* dictates an affirmance.

*Affirmed.*[2]

GERBER and KUNTZ, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[2] Although not raised by the State, the father's interests also conflicted with the victim's interests. *See* Art. 1, § 16(e), Fla. Const. (defining the term "victim" to include "the next of kin of a homicide victim, **except upon a showing that the interest of such individual would be in actual or potential conflict with the interests of the victim**." (emphasis added)). The father's testimony supported the defendant, not the victim. The victim's right to be present in the courtroom therefore does not extend to the father.